RPD:BTR
F.#1997RO1825
Vondette.Mot

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

    - against -            CR-97-1010 (TCP)

MICHAEL VONDETTE,

        Defendant.

- - - - - - - - - - - - - - - X


## GOVERNMENT'S MEMORANDUM OF LAW IN
## OPPOSITION TO DEFENDANT'S MOTION FOR A RESENTENCING




ROSLYNN R. MAUSKOPF
United States Attorney
Eastern District of New York
610 Federal Plaza
Central Islip, New York 11772


BURTON T. RYAN, Jr.
Assistant U.S. Attorney
    (Of Counsel)

RPD:BTR
F.#1997RO1825
Vondette.Mot

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

    - against -                          CR-97-1010 (TCP)

MICHAEL VONDETTE,

        Defendant.

- - - - - - - - - - - - - - X

### PRELIMINARY STATEMENT

The defendant, Michael Vondette, appears before this Court, on remand from the Second Circuit, to determine whether or not the defendant preserved a Sixth Amendment objection that entitled the defendant to a complete resentencing based on his objection to the mandatory application of the United States Sentencing Guidelines that would have mandated a full resentencing pursuant to United States v. Fagans, 406 F.3d 138 (2d Cir. 2005).

Despite his current assertions that he made such objections, a careful examination of the many motions filed by both Vondette's attorneys and Vondette pro se establishes that, despite having filed over 80 motions before trial, at no time did they raise any objection to the compulsory application of

the sentencing guidelines.   Under United States v. Crosby, 397 F.3d 103 (2d Cir 2005), without a preserved objection to the compulsory application of the guidelines, the defendant is only entitled to review for plain-error, specifically whether or not the Court would have applied a materially different sentence under advisory guidelines.   If the Court believes that the 40-year sentence is appropriate under 18 U.S.C. 3553, no resentencing is necessary.

Having obtained a remand, the defendant also utilizes the remand to rehash many of his previously rejected arguments. Though outside the scope of the remand.   They are dealt with below and should be similarly rejected here.

STATEMENT OF THE FACTS

## History of Vondette's Litigation

### First Indictment

Michael Vondette was brought into federal custody on October 30, 1997, on an arrest warrant issued in the Eastern District of New York for his involvement in arranging for the delivery and distribution of nine thousand pounds of hashish, United States v. Michael Vondette, 97 M 572(MLO).   On October 31, 1997, Vondette was indicted by a Grand Jury in the Eastern District of New York.   On December 2, 1997 the defendant was arraigned on the indictment in the Eastern District.   Vondette initially retained Louis Freeman as counsel, and at the

arraignment defendant waived his speedy trial rights, anticipating a need to file motions and discuss the case with his counsel.

Michael Vondette filed his first of many motions on April 15, 1998. He filed a motion to (1) dismiss the indictment, also seeking, inter alia; (2) severance of the forfeiture claim outlined in the indictment and to hold a separate trial on it; (3) a bill of particulars; (4) an order suppressing identification testimony; (5) a 404B notice prohibiting evidence about defendant's prior convictions; (6) pre-trial notice and hearing of all of the defendant's prior convictions and wrongs that the Government intends to offer at trial; and (7) an order directing the Government and its agents to preserve rough notes and documents related to prospective Government witnesses [Docket No. 17]. Defendant also submitted several additional motions on the same date, requesting (8) additional discovery under Rule 16 [Docket No. 20]; (9) disclosure of agreements between the Government and the Government's witnesses [Docket No. 22]; and (10) a motion to require the Government to reveal any agreement, concession or grant immunity [Docket No. 24].

Before these motions were argued, defendant discharged Louis Freeman as counsel and retained Robert I. Kalina as substitute counsel. With defense's consent, the case was deemed

complex.   Jury selection was scheduled to begin on October 5, 1998.   However, in light of defendant's requests, the case was adjourned to November 2, 1998 [Docket No. 36] and then to November 17, 1998 [Docket No. 37].

### Superceding Indictment

While the November trial was pending, a superceding indictment was returned which expanded the time period covered by the criminal enterprise and added the controlled substance methaqualone to the list of controlled substances associated with the defendant.   United States v. Michael Vondette, 97 CR 1010(S-1)(TCP).   The indictment also added a money laundering charge.   Vondette was arraigned on the new indictment on October 23, 1998 [Docket No. 41].

On November 3, 1998, Vondette filed a motion (11) to dismiss the superceding indictment arguing that under United States v. Singleton, 144 F.3d 1343 (10th Cir. 1998), the Government's use of cooperating witnesses necessitated dismissal of the indictment [Docket No. 48].   This motion was denied without prejudice to renew by the Court on November 5, 1998 [Docket No. 46]. Defendant later filed a motion (12) for reconsideration of the Defendant's Singleton motion [Docket No. 65].

Additional Defense Motions

On December 17, 1998, Vondette filed numerous motions that again addressed the superceding indictment. Vondette filed (13) a motion for discovery [Docket No. 52]; (14) a motion to Dismiss Counts 1 and 2 of the superceding indictment, and to Dismiss the entire superceding indictment [Docket No. 54]; (15) an additional motion for 404B material [Docket No. 56]; and (16) an additional motion for a Bill of Particulars [Docket No. 58]

While these motions were pending, Defendant filed an interlocutory appeal arguing that the indictment was "jurisdictionally defective" {Docket No. 132]. Defendant filed numerous interlocutory appeals as his case proceeded; he appealed the denial of his bail package in December of 1999 [Docket No. 131 and 132]

Vondette filed another set of motions on May 26, 1999 which involved: (17) requests for additional discovery and Brady material [Docket No. 67]; (18) motion for dismissal of Counts 1 and 2 of the superceding indictment and to reveal all Grand Jury minutes [Docket No. 75]; (19) motion for a Bill of Particulars [Docket No. 69]; (20) motion for a hearing on the audibility of the tape recordings and suppression of the tape recordings [Docket No. 71] and (21) a motion to strike certain portions of the indictment referring to the Defendant by various aliases as surplusage [Docket No. 73].   The Government replied to these

motions on June 18, 1999, prompting the defendant to file a motion (22) for additional time to file reply papers, which was granted [Docket No. 84].    While these motions were being considered, Defendant filed a letter motion (23) to adjourn the case until September 17, 1999, which was granted [Docket No. 96].

### Defendant's First Set of Pro Se Motions

In late October, Defendant prepared a series of motions, which were adopted by his counsel.    On October 21, 1999, Defendant's filings included: (24) a motion for disclosure of Grand Jury transcripts [Docket No. 109]; (25) a motion to compel disclosure of the Grand Jury concurrence forms [Docket No. 110]; (26) a motion to compel production of the Grand Jury transcript and any and all evidentiary items [Docket No. 111]; (27) a motion to compel disclosure of unauthorized persons before the Grand Jury [Docket No. 113]; (28) a motion to compel the Government to reveal use of summaries of testimonies or documents [Docket No. 112]; (29) a motion for disclosure of Grand Juror attendance records and record of Grand Jury concurrence vote on the indictments [Docket No. 114]; (30) motion for pre-trial evidentiary hearing to determine existence of conspiracy [Docket Nos. 116 and 118]; and (31) motion for a pre-trial hearing on the admissibility of co-conspirator's statements [Docket No. 115].    Finally, the Defendant filed a

motion (32) to dismiss the entire indictment for vindictive prosecution [Docket No. 120]. Defendant's motions to dismiss the indictment and his motions regarding venue were denied by this Court on March 14, 2000 [Docket No. 142].

Despite having retained counsel for over two years, defendant filed a motion (33) to proceed in forma pauperis on January 12, 2000. That spring, Vondette filed numerous pro se motions. He filed a motion (34) requesting a psychological evaluation of the Government's cooperating witnesses in February of 2000 [Docket No. 139]. In March, Vondette filed a motion (35) to dismiss Count Four of the Indictment [Docket Nos. 156 and 164]. In April of 2000, Vondette filed an additional series of motions seeking; (36) to compel production of all exculpatory evidence [Docket No. 160]; (37) to dismiss Count Two of the Indictment [Docket No. 164] (this motion essentially repeats a prior motion filed in May of 1999 [Docket No. 75]); (38) for entry of an order requiring a psychiatric examination of the Government's principal witnesses [Docket No. 168]; and (39) to suppress evidence obtained by wiretap or electronic devices [Docket No. 170]. Later that month, Vondette filed a motion (40) for reconsideration of the Court's decision to deny defendant's motion to dismiss Count One of the indictment [Docket No. 145]. These motions were decided on May 22, 2000, with the Court granting disclosure of the Grand Jury concurrence

forms and requiring transcripts of the tape recordings in evidence [Docket No. 173]. Defendant's repetitive motions to dismiss the indictment for various grounds were dismissed due to collateral estoppel based on the March 14, 2000 ruling.

### Interlocutory Appeals

After the District Court's ruling on March 14, 2000 that the indictment and venue were proper [Docket No. 142], Defendant initiated an Interlocutory Appeal [Docket Nos. 176, 177 and 179]. This appeal involved a separate motion to proceed in forma pauperis for purposes of appeal [Docket 177]. Defendant then filed an additional Notice of Interlocutory Appeal regarding the Court's decisions on May 22, 2000 where Defendant was estopped from moving to dismiss the indictment on grounds decided on March 14, 2000 [Docket No. 180]. The appeal was denied on July 20, 2000 [Docket No. 189]. On August 16, 2000, the defendant moved for reconsideration. On October 2, 2000, the Court of Appeals denied that motion.

### Defendant's Pro Se Motions after the Withdrawal of Counsel

On May 8, 2000, Robert Kalina, Vondette's second retained counsel moved to be permitted to withdraw from Vondette's case due to ethical conflict. While this motion was pending, counsel became gravely ill and was unable to continue the case. Rather than accept court-appointed counsel, Vondette elected to proceed pro se.

Despite Vondette's numerous prior motions requesting adjournments and waivers of Speedy Trial, on July 21, 2000; Defendant filed a pro se motion (41) to dismiss the original and superceding indictments on Speedy Trial grounds [Docket No. 188]. The Court denied this motion on September 20, 2000 when they denied all of Vondette's pending motions. Defendant also filed (42) additional discovery requests, (43) a habeas corpus petition and (44) a motion to recuse Judge Platt [Docket No. 205]. Vondette then filed another motion (45) to proceed in forma pauperis [Docket No. 207]. The motion to proceed in forma pauperis was granted on October 5, 2000. On November 8, 2000, Vondette filed a petition for a writ of Mandamus [Docket No. 227].

During September and October, the Government provided the defendant with a series of meetings and opportunities to examine the Government's evidence. The defendant then filed an additional series of motions and outlined their activity in a letter dated October 18, 2000 [Docket No. 223]. These motions included but were not limited to (as Vondette stated): a motion to dismiss Count One (46), a motion to dismiss Count Two (47), a motion to dismiss the superceding indictment due to prosecutorial misconduct (48), a motion for Freedom of Information Act information (49), a motion for additional evidence (50), and again requested a recusal of Judge Platt for

the habeas corpus petition (51) [Docket 212]. These motions are repetitive and raise issues already determined by the Court in September of 2000.

Despite Vondette's extensive involvement in extending the length of his trial by filing numerous repetitive motions and interlocutory appeals, he filed a motion (52) to dismiss the superceding indictment or alternatively release on bail due to speedy trial violations [Docket No. 233]. Defendant's motion stresses the period of time that he had been detained awaiting trial. However, at a court conference on November 30, 2000 when the Judge explained to Vondette that filing additional motions would cause further delay, Vondette nonetheless advised the Court that he intended to file more motions in the coming weeks [Docket No. 234]. At this hearing, Vondette even stressed that a January trial was unrealistic given his motion practice resulting in a trial scheduled for March of 2001.

In response to the superceding indictment, of November 9, 2000 (Exhibit 1), defendant filed a letter motion (53) to dismiss the indictment seeking, inter alia; (54) a renewal of his habeas corpus petition and a renewal of his (55) motion to recuse Judge Platt from this petition; (56) a motion for further discovery; (57) a motion for additional disclosure of potential Government witnesses; (58) a motion for disclosure of Grand Jury testimony; (59) an additional motion for Freedom of Information

Act disclosure; (60) a motion for an "order of proof" pursuant to Rule 104; (61) a motion of a bill of particulars; (62) a motion to preclude testimony or dismiss the indictment based on the anti-gratuity statute; (63) a motion to turn over the original audiotape with a "chain of custody" documentation; (64) motion to suppress testimony by Mr. Timewell, or for disclosure of all DEA and custom service documents related to Timewell; resubmission of motions (65) for a 404B evidentiary hearing; (66) motion for a pre-trial identification hearing and (67) motion for a pre-trial physical review of all evidence to be used at trial [Docket No. 240]. Shortly after these motions were filed, Vondette again filed a motion (68) to be released on bail pending trial on the grounds that his right to speedy trial was violated [Docket No. 256]. Despite these objections to the time it has taken to bring Vondette to trial, in a pre-trial hearing on March 8, 2001, he again asked for an adjournment to further prepare for trial [Docket No. 270]. That month he also filed, (69) a motion for an indefinite staying of trial and (70) a motion to compel Robert Kalina to transfer the case file to the defendant [Docket No. 282]. While these 70 motions are not exhaustive of all of Vondette's motion practice, they nonetheless represent his pre-trial motion practice of filing numerous repetitive motions.

By April of 2001, the Court had found that Vondette had filed by its count over 80 motions (Exhibit 3). On March 30, 2001 the Court denied all of Vondette's pending motions. Vondette was also instructed to stop filing motions. On April 6, 2001 in defiance of this Court's instruction, Vondette filed three more motions that were also rejected by the Court [Docket No. 292]. Defendant then filed an additional motion on April 11, 2001 to stay the Court proceedings until June [Docket No. 297]. The Court denied this motion.

### The First and Second Trials

Vondette's first trial began on April 16, 2001. He initially began the trial pro se with court-appointed counsel, Mr. Joel Weiss acting as an advisor. Shortly into the trial, Vondette retained counsel, Valerie Amsterdam and John Jacobs to represent him at trial. The trial proceeded until May 3, 2001 when the Court declared a mistrial because of the jury's inability to reach a verdict.

Before the second trial began, Amsterdam and Jacobs requested to be relieved as counsel based on Vondette's inability to pay. Howard Jacobs, esq. was appointed to provide Vondette legal counsel at the second trial. Vondette elected to proceed pro se with Jacobs serving as an advisor.

The retrial began on May 21, 2001 and Michael Vondette was convicted after a trial by jury of conspiring to distribute

hashish, marijuana, and methaqualone in violation of 21 U.S.C. §
846, and conspiracy to launder money in violation of 18 U.S.C. §
1956(h) June 5, 2001.    Subsequent to the guilty verdict, the
parties presented oral arguments in regard to the Government's
forfeiture claims.    The  jury  found  Vondette  liable  for
forfeiture  of  $5,882,170  based  on  the  drug  trafficking
conspiracy  and  $2,679,170  based  on  the  money  laundering
conspiracy (Exhibit 2).

### Motions between conviction and sentencing

Vondette filed a motion for a Judgment of Acquittal and/or
a New Trial on July 23 2001 [Docket No. 385] (Exhibit 5).    In
it, Vondette raised many of the same issues he raised in his
pre-trial  motions,  arguing  for  an  acquittal  based  on
manufactured jurisdiction, improper venue, outrageous Government
misconduct and various discovery issues.    Vondette objected to
sentencing enhancements by arguing that they should be included
in the indictment and objected to the inclusion of his prior
conviction as a sentencing enhancement [Docket No. 385] (See
Exhibit 6).    However, these objections related to a dismissal of
the indictment, not to the sentencing guidelines.

On June 27, 2002, Vondette requested a Fatico hearing based
on his objections to his pre-sentencing report.    Vondette did
not argue against use of the sentencing guidelines; instead, he
argued against the analysis used, and that he should receive a

base level of 12 for Count One (based on his calculations of the amount of controlled substance involved in his conspiracy) and that he should receive a base offense level of 14 for count two. Vondette also took issue with his classification as "leader".

The defendant also moved the Court for additional downward departures and contested his base offense level in his second addendum reply, dated July 24, 2002 (Exhibit 7). Vondette did not object to the compulsory application of the guidelines, leaving these issues unaddressed.

Finally, Vondette objected to the forfeiture order, claiming that the amount involved "double counting". The Court overruled these objections on March 18, 2002, [Docket No. 395] and the Court adopted the forfeiture order. The Court rejected Vondette's motion for Judgment of Acquittal and/or a New Trial in August [Docket No. 402] (Exhibit 8). In April 2002, Vondette filed a motion for reconsideration of the forfeiture order [Docket No. 397]. The Court also noted that the answers to Vondette's numerous objections to his Pre-Sentencing report could be found in the jury's special verdict sheet [Docket No. 402](Exhibit 2).

### Sentencing

Vondette was ultimately sentenced on September 6, 2002. The Government recommended life imprisonment per a Guidelines range of 360 months to life imprisonment. The Court sentenced

Vondette to 480 months incarceration, five years' supervised release, a $25,000 fine, a $200 special assessment and a forfeiture of $2,027,845.   Vondette subsequently appealed his conviction and sentence.

### Appeal

Vondette appealed his conviction on various grounds, objecting to federal jurisdiction over the case, the Eastern District of New York as venue, the Court's conduct in addressing his objections at trial, the empanelling of an anonymous jury, jury instructions regarding his indictment, and the construction of his charges and the special verdict.   Vondette also challenged his sentence and argued that his prior conviction should not be used as a sentencing enhancement, disputed the method of calculation of the amount of controlled substance he was sentenced for, raised factual disputes with the pre-sentencing report with regard to his characterization as a "leader", with the finding of "relevant conduct", for a heightened standard of proof in establishing his case, and that his forfeiture was unconstitutional.   The Second Circuit affirmed his conviction and sentence in their entirety stating, "Vondette makes a number of challenges to his sentence but they all lack merit." U.S. v. Vondette, 76 Fed.Appx 358, 363 (2d.

Cir. 2003)(Exhibit 9)[1]. Most importantly, this ruling established that the Second Circuit did not find instances of unconstitutional judicial fact-finding in Mr. Vondette's case, resolving all of the issues that he raised under Apprendi.

## Reconsideration Proceedings

While these appeals were pending, the Supreme Court decided United States v. Booker, 543 U.S. 220 (2005) which held that the Federal Sentencing Guidelines were now advisory as opposed to mandatory and then remanded Vondette's case to the District Court for further proceedings.

Vondette has since moved for an entirely new sentencing hearing and reviews numerous objections to his sentencing that he made on initial appeal. He also raises several new issues concerning forfeiture and weight calculation of marijuana which, despite being unpreserved, are nonetheless addressed as being meritless.

### Argument

### POINT ONE

A.   A Crosby remand does not guarantee a full resentencing.

Vondette argues that by the standards of Booker, he is entitled to a resentencing as a matter of law. This interpretation of Booker is incorrect. The Second Circuit

---

[1] Hereinafter, The Second Circuit opinion will be referred to by citation.

addressed the procedure for active appeals remanded under Booker

in U.S. v. Crosby, 397 F.3d 103, 118 (2d Cir. 2005), holding

that:

> A remand for determination of *whether* to resentence is
> appropriate in order to undertake a proper application of
> the plain error and harmless error doctrines. Id.

Crosby does not set forth an automatic re-sentencing.

Instead, it asks the Court to re-examine the previous sentencing

in light of the Booker holding and test for reasonableness.

U.S. v. Crosby, 397 F.3d 103 (2d Cir. 2005) stresses that the

Federal Sentencing Guidelines under the Sentencing Reform act

are largely untouched, holding that Booker excised the

provisions that made the guidelines mandatory and set out the

standard for review on appeal. Id. at 110.

The Court concludes:

> Thus, the excision of the mandatory aspect of the
> guidelines does not mean that the guidelines have been
> discarded. On the contrary, sentencing judges remain under
> a duty with respect to the Guidelines – not the previously
> imposed duty to apply the Guidelines, but the continuing
> duty to "consider" them along with other factors listed in
> section 3553(a). Id. at 111.

The Court also states:

> Thus the sentencing judge will be entitled to find all of
> the facts that the Guidelines make relevant to the
> determination of a Guidelines sentence and all of the facts
> relevant to the determination of a non-Guidelines sentence.
> Id.

Additionally, the decision in Crosby does not depreciate

the importance of the Sentencing Guidelines, emphasizing that

the District Court will still be guided by its previous guidelines calculation on a Crosby remand to determine whether to resentence. See United States v. Gonzalez, 407 F.3d 118, 124 (2d Cir 2005).

Vondette claims in his reply to the Government's Opposition to De Novo PSR and Resentencing, that he is entitled to a new resentencing pursuant to United States v. Fagans, 406 F.3d 138 (2d Cir. 2005) which held that when a defendant properly preserves a Sixth Amendment objection, the Court can remand for resentencing, rather than a remand for consideration of whether or not to resentence. In Fagans, the defendant objected to the constitutionality of the Guidelines outright, thus preserving his Sixth Amendment violation, a situation distinguishable from the present case. Id. at 140.

While Vondette mentioned Apprendi occasionally, none of his objections addressed the applicability of the sentencing guidelines. His remand is unique because his case has already been reviewed on the merits by the Court of Appeals. On appeal the Court found that his Apprendi based objections were without merit. The objections that cite Apprendi will be thoroughly analyzed below. However, a close examination of those objections illustrated that Vondette did not raise issues that attack the Guidelines and did not preserve an objection that would require a full resentencing. see United States v. Damti,

2005 WL 2465812 (E.D.N.Y.) (finding on a <u>Crosby</u> remand that objections to the use of sentencing enhancements do not constitute objection to the mandatory application of the guidelines).

Moreover, the Second Circuit has held that the prohibition on judicial fact-finding in <u>Apprendi v. New Jersey</u>. 530 U.S. 466 (2000) does not apply to Guidelines calculations that remain within the statutory sentence range. As will be addressed below, Vondette's objections that he raised pursuant to <u>Apprendi</u> criticize judicial use of Guidelines enhancements and the inclusion of controlled substance amounts. As a result, Vondette's numerous objections to calculations within the guidelines do not raise issues pertinent to a <u>Crosby</u> remand, meaning that Vondette's numerous objections do not justify a resentencing. <u>see</u> <u>Rodriguez v. United States</u>, 2006 WL 1896336 (E.D.N.Y.) ("Nothing in <u>Booker</u> or <u>Crosby</u> prevents judicial fact-finding at sentencing"), <u>citing</u> <u>United States v. Garcia</u>, 240 F.3d 180, 183-184 (2d. Cir. 2005) (holding that the prohibition on judicial fact-finding in <u>Apprendi</u>, does not apply to Guidelines calculations within the statutory range).

B.   <u>Vondette does not preserve an objection to the mandatory application of the Sentencing Guidelines, necessitating plain-error analysis.</u>

Vondette contends that his objections which he raised pursuant to <u>Apprendi v. New Jersey</u>, 530 U.S. 466 (2000),

properly preserved his objections to the Federal Sentencing Guidelines.    While Vondette frequently debated where he fell within the guidelines, he never objected to the Guidelines themselves, and his allegations of judicial fact-finding were found to be without merit by the Court of Appeals.    Moreover, courts have found that after Booker, a sentencing judge is entitled to find all facts that the Guidelines make relevant to the determination of a sentence that falls within statutory range.    United States v. Gonzalez, 407 F.3d 118, 125 (2d Cir. 2005), citing Crosby, 397 F.3d at 112; see also McReynolds v. United States, 397 F.3d 479, 481 (7th Cir. 2005); United States v. Hughes, 401 F.3d 540, 546 (4th Cir. 2005).

On page 2 paragraph 2 of Defendant's Sentencing Memorandum (Exhibit 6), Defendant argues that his conviction under 21 U.S.C. 846 was improperly sentenced under 21 U.S.C. 841(b)(1)(A) and 841(b)(1)(C) because it grouped substances together and subsection (C) could potentially carry a less serious penalty. 21 U.S.C. §841(b)(1)(C) explicitly states that it applies to the cases that do not fall into the categories outlined in sub paragraphs (A), (B), and (D).    Vondette's conviction correctly falls into 21 U.S.C. §841(b)(1)(A)(vii)[2].    This objection was brought to the attention of the Second Circuit on appeal and

_____

[2] 1000 kilograms or more of a mixture or substance containing a detectable amount of marijuana, or 1,000 or more marijuana plants regardless of weight.

they decided that it was without merit.    Vondette cites Apprendi

in this objection; however, the objection does not raise any

Sixth Amendment issues and can be resolved by examining the

Code.    Vondette did not object to the application of the

Guidelines in his sentence; he merely wanted to be in a less

severe classification within them.

One page 5, paragraph 5 of the same memo (Exhibit 6),

Vondette cites Apprendi while arguing that the Government has

manufactured jurisdiction and entrapped the defendant.    He

argues that the Government thus created intent to distribute.

Vondette's intent and the conspiracy were tried to a jury and

Vondette was convicted.    The Second Circuit reviewed the

objection and found it to be without merit.    This objection does

not raise any issue related to the Federal Sentencing

Guidelines.

On page 10 of Vondette's sentencing memo, he objects to the

construction of the indictment with respect to the amount of

money he was convicted of laundering.    Citing Apprendi, Vondette

argues that the $5,800 of money he was convicted of laundering

cannot be used as a sentencing enhancement.    The Second Circuit

found no merit to this or any of Vondette's numerous disputes

regarding dollar amount of his forfeiture or the length of his

sentence.    Again, Vondette does not contend that the Federal

Sentencing Guidelines should not be applied to his case; he only

has factual disagreements with the way they are applied to his situation. This Court also addressed these and other factual objections to the Pre-Sentencing Report in 2002, arguing that Vondette could find answers to his objections to the pre-sentence report in the special verdict sheet. (Exhibit 8).

On page 14 of the same memo (Exhibit 6), Vondette argues that the leadership enhancement should not be applied to his sentence, claiming that under Apprendi that the element of leadership was not fully addressed at trial. This objection was also raised in Vondette's Motion for a New Trial submitted July 19, 2001 (Exhibit 5). The Second Circuit affirmed his sentence despite these objections. Again, Vondette did not in any way allege prejudice as a result of mandatory nature of the Sentencing Guidelines; he only objects to the facts of his case. Since Booker was decided, the Second Circuit has also found it does not violate either Booker or the Sixth Amendment for a sentencing judge to determine leadership for a sentencing enhancement when it does not raise the statutory maximum. United States v. Holguin, 436 F.3d 111, 117 (2d Cir. 2006).

Vondette also objects to the preponderance standard of proof repeatedly in his sentencing memo, preferring a clear and convincing evidence standard (See page 29, paragraph 3 of Exhibit 6). Vondette relies on United States v. Gigante, 94 F.3d 53, 56 (2d. Cir. 1996) which argued that the preponderance

standard is "no more than a *threshold* standard for adjustments and departures". (emphasis in original). However, <u>Gigante</u> also states, "generally, of course, a failure to depart downward is not appealable." <u>Id.</u> at 56, fn. 2, citing <u>United States v. Colon</u>, 905 F.2d 580 (2d Cir. 1990). In <u>United States v. Beatty</u>, 293 F.3d 627, 631 (2d. Cir. 2002), a defendant similarly argued that an upward adjustment of his sentence merited a higher standard of proof. The Second Circuit rejected this argument on the grounds that his objections were already addressed by the District Court. Vondette similarly raised his objections to the District Court and the Second Circuit for a higher standard of proof and had them rejected. These objections were properly addressed at sentencing and on appeal and do not raise any issues related to the former requirements of the sentencing guidelines.

Vondette also raises numerous objections related to the construction of the special verdict (See Exhibit 6 - page 4, paragraph 4; page 10, paragraph 5; page 13, paragraph 4). He objects to the determination of the amount of controlled substance after conviction. Defendant relies only on <u>United States v. Greer</u>, 258 F.3d 158 (2d Cir. 2000) wherein the court held that drug amounts can be considered by the sentencing judge so long as the sentence does not exceed the statutory maximum. The Second Circuit found Vondette's objection to be without

merit. Again, this objection does not raise any questions as to the applicability of the Sentencing Guidelines; Vondette objects to the calculations of where he falls within them. Vondette also objects to the offense level attributed to his conviction in Count Two, arguing that his offense level should be 14 (See Exhibit 6 - page 13, paragraph 4). Again, Vondette raises no objection to the Guidelines themselves. The Second Circuit found that these objections to his sentence were without merit and affirmed his sentence and his offense level.

Finally, Vondette emphasizes statements made where he argued that the Guidelines are unconstitutional. Placed within context, these objections do not pertain to the Guidelines being mandatory, but rather to separation of powers arguments related to Justice SCALIA'S dissent in Mistretta v. U.S., 488 U.S. 361. Vondette argues for a clear and convincing evidence standard as a result of these objections. These objections do not raise Booker concerns of unconstitutionally binding a judge to a mandatory sentence.

Defendant's allegations of Sixth Amendment violations do not actually allege Booker violations. The first objection that Vondette claims preserves a Sixth Amendment violation questions the differences between 21 §841(b)(1)(C) and 21 §841(b)(1)(A) (See Exhibit 6 - Page 40, paragraph 2) This objection did not pertain to the sentencing guidelines, and it did not raise a

valid Sixth Amendment error under Apprendi analysis.  The Second
Circuit  had  already  determined  that  defendant's  sentencing
objections  were  without  merit  while  considering  issues  raised
under Apprendi.  United States v. Vondette, 76 Fed.Appx. at 365.
This  objection  relates  to  a  factual  disagreement,  not  to  the
applicability  of  the  sentencing  guidelines.   Moreover,  Booker
held, "For when a trial judge exercises his discretion to select
a specific sentence within a defined range, the defendant has no
right to a jury determination of the facts that the judge deems
relevant."  Booker, 543 U.S. at 233.   The Second Circuit has also
lent support to a "real offense" sentencing approach where the
judge  is  entitled  to  consider  facts  at  sentencing  not  in  the
indictment.   See U.S. v. Copeland, 902 F.2d 1046, 1048-1049 (2d
Cir. 1990).

        Vondette  also  contends  that  the  judge's  denial  of  his
interrogatory  request  regarding  consideration  of  the  amount  of
marijuana and hashish in question.  Vondette contends that this
finding  eliminates  judicial  consideration  of  substance  amounts
at  sentencing.   The  Second  Circuit  rejected  all  of  Vondette's
contentions that related to drug amounts in the pre-sentencing
report,  stating  that,  "the  evidence  at  trial  demonstrated  that
Vondette  agreed  to  transport  two  tractor  trailers  of  hashish.
The  8,164.8  kilograms  represents  the  hashish  in  the  two
trailers."  United  States  v.  Vondette,  76  Fed.Appx.  at  365.

While Vondette contends that the pre-sentencing report is precluded from determining drug quantity as a result of this rejected interrogatory, Crosby encourages District Judges to consider all applicable information, including pre-sentencing reports. Because 21 § 841(b)(1)(A) carries a statutory maximum of life imprisonment, the Court did not exceed the statutory maximum or its authority to sentence the defendant. See Beatty v. United States, 293 F.3d 627 (2d Cir. 2002).

The claim that the jury's conviction related only to the exact amount of the indictment (which was a range which the sentenced amount fell within) is without merit. See Copeland. The Second Circuit affirmed the sentence and found that defendant's limited view of the jury's fact-finding did not reflect the abilities of the Court in sentencing.

C.   Plain Error Analysis is Warranted in Vondette's situation.

Under Crosby, without a preserved objection to the compulsory application of the Sentencing Guidelines, the only review necessary on a remand for reconsideration of whether or not to resentence is review for plain-error. Plain-error analysis allows for the review of unpreserved error when it is plain to the Court, has prejudiced the defendant, and failure to remedy the error would affect the integrity of judicial proceedings. United States v. Olano, 507 U.S. 725 (1993). Under Crosby, this four-part analysis is distilled down to the

single question of whether or not a materially different sentence would result under advisory guidelines. The prior application of mandatory guidelines satisfies the first two prongs, there is error that is plain. However, if the defendant did not suffer the prejudice of a materially different sentence, the error is harmless and there is no threat to the judicial process and the plain error test is not satisfied. If the defendant did receive a materially different sentence, the plain error test is satisfied. See United States v. Garcia, 413 F.3d 201, 205 (2d Cir. 2005); United States v. Williams, 399 F.3d 450, 460 (2d Cir. 2005).

Defendant argues that plain error justifies a de novo hearing by arguing that United States v. Olano, 507 U.S. 725 (1993), justifies a new sentencing through its definitions of plain error and prejudice. Vondette's analysis is not consistent with that of the Second Circuit.

The Government contends that the only error in Vondette's sentence was the mandatory imposition of the sentencing guidelines that nonetheless resulted in a reasonable sentence. The Defendant's prior objections were shown to be without merit and did not raise or preserve any objection to the mandatory application of the guidelines. By examining the sentence under the Crosby plain-error test, it can be seen that there is no plain error under Crosby and any previously raised objections

that have been properly raised were rejected by the Second Circuit.

In Vondette's situation, his sentence has already been reviewed for plain error excepting <u>Booker</u> violations, and the Second Circuit did not find any. Every one of his objections to his sentence was found to be without merit. The Second Circuit outlines the purpose of a remand where no objection to the mandatory application of the Guidelines is preserved, as being necessary to determine if a different sentence would have resulted had the sentencing occurred post-<u>Booker</u> holding, "If a District Court determines that a nontrivially different sentence would have been imposed, that determination completes the demonstration that the plain-error test is met." <u>Id.</u> <u>at</u> 118.

In Vondette's case, he was not prejudiced by his sentence in light of his prior conviction and authoritative role in transporting the controlled substance. While remand is warranted, his sentence is not unreasonable and can be affirmed under plain-error doctrine as long as the Court concludes that it would not have imposed a materially different sentence under advisory guidelines. <u>See</u> <u>Crosby</u> 397 F.3d at 119. The Second Circuit further explains that under plain-error analysis, the plain-error that justifies the <u>Crosby</u> remand is not the use of enhancements under the sentencing guidelines but is the mandatory use of the sentencing guidelines. <u>See</u> <u>United States</u>

v. Williams, 399 F.3d 450, 458 (2d Cir. 2005).  The question the
District Court faces on remand is only whether the sentence
would be materially different with advisory sentencing
guidelines.  See id. at 461.

The Defendant argues that justification for resentencing
can be found in structural error within his sentence, arguing
that this alleged structural error infects the entire sentencing
process.  This belief is wholly inconsistent with the Second
Circuit's interpretation of a sentencing remand under Booker.
The Second Circuit outlines that the purpose of the remand is
not to automatically resentence but instead to determine whether
to resentence.  See Crosby 397 F.3d at 117.

## D.   The defendant's alternative arguments for resentencing are meritless.

Defendant also argues that his substantial rights have been
violated, arguing that his sentencing enhancement was a Sixth
Amendment error.  The Second Circuit has emphasized that the
only Sixth Amendment error justifying remand is the mandatory
application of the sentencing guidelines.  Use of enhancements
is not a Sixth Amendment error.  See United States v. Williams,
399 F.3d 450, 458 (2d Cir. 2005).  Defendant's argument that his
enhanced sentence has prejudiced him is without merit and does
not address any issues that would allow a resentencing.

Defendant, relying on <u>United States v. Barnett</u>, 398 F.3d 516, 529-530 (6th Cir. 2005) argues that there is a presumption of prejudice that cannot be rebutted by the record. The Second Circuit has held that unless sentencing under the advisory guidelines would have been materially different, the defendant has not suffered prejudice. <u>See</u> <u>Williams</u> at 461.

Defendant argues that the Court must be afforded an opportunity to impose a sentence under the advisory sentencing guidelines. The Second Circuit has explicitly said that the remand to the District Court provides the Court a full opportunity to consider whether to re-sentence and if necessary to re-sentence. <u>See</u> <u>Crosby</u> 397 F.3d at 117.

Defendant claims that he was not afforded an opportunity to object to his sentence after the District Court has pronounced the sentence but before adjourning the sentencing hearing. Relying on <u>U.S. v. Bostic</u>, 371 F.3d 865 (6th Cir. 2004), Vondette argues that he will not be required to demonstrate plain error on appeal. Defendant did not raise this objection while appealing his sentence. Because this is a remand to determine whether to re-sentence, not a direct appeal, Vondette cannot raise objections he previously waived on appeal. <u>United States v. Ogle</u>, 415 F.3d 382 (5th Cir. 2005) (holding that a defendant cannot raise challenges waived on appeal on a <u>Booker</u> remand).

## POINT TWO

Vondette raises objections
already decided by this Court that remain
meritless and irrelevant under Crosby analysis.

Consistent with Vondette's extensive litigation of his trial, sentencing, and appeal, Vondette has raised issues that do not address issues pertinent to plain-error analysis on a Crosby remand.   The arguments were decided by this Court on previous motions and were also presented to the Second Circuit on direct appeal.   They were determined to be, and remain, meritless.   They are nonetheless, addressed below:

A.   Defendant's Argument titled "Every Single Aspect of the Original Sentence is Unconstitutional and should be Reviewed De Novo" is without merit.

On page 10 of Vondette's Motion for De Novo Review of the Original Sentence (Exhibit 6), he again raises arguments that his sentence was unconstitutionally bifurcated and that the indictment was unconstitutionally altered as he did on direct appeal.   Vondette also raised objections to the construction of the indictment repeatedly before trial.   He also brought these objections to the attention of this Court when he moved for a new trial.   These objections were found to be without merit by the District Court.   Additionally, these claims were found to be without merit by the Second Circuit, who stated that the construction of the conspiracy charge did not cause Vondette

prejudice and that the amendment to the indictment and the alteration of the special verdict sheet were in accordance with the law. Vondette, 76 Fed.Appx. at 363-364. Defendant continues to argue that these alterations were unconstitutional and that they raise Sixth Amendment issues. However, the Second Circuit has already found that these alterations were proper. It must be noted that these violations do not object to the applicability of the sentencing guidelines. Because these objections are not pertinent to remand pursuant to Booker, they remain barred by res judicata. See United States v. Ogle, 415 F.3d 382 (5th Cir. 2005)

The Defendant argues that his sentence was unconstitutionally enhanced by judicial fact-finding. The Second Circuit found that Vondette's sentence was properly determined and that, "the jury was instructed to make specific findings regarding the hashish and the marijuana and these findings allowed the Court to impose a sentence of ten years to life under the statute." Vondette, 76 Fed.Appx. at 363. The jury properly determined Vondette's sentence, making the enhancement proper under Apprendi.

Defendant, relying on Richardson v. U.S., 526 U.S. 813 (1999), argues that his sentence lacks a proper unanimous jury finding, claiming that because both 21 U.S.C. § 841 (b)(1)(A) and 21 U.S.C. § 841 (b)(1)(C) were alleged in the indictment,

there is no clear finding as to which statute the jury agreed on. This is not the case as the Second Circuit already found that the jury made specific determinations that resulted in sentencing under 21 U.S.C. § 841 (b)(1)(A). This argument was raised on direct appeal and was rejected by the Second Circuit Vondette, 76 Fed.Appx. at 363. This objection does not pertain to his sentence but to the construction of the jury charge.

Defendant also argues that his sentence was unconstitutional because the indictment did not allege multiple conspiracies. This claim was addressed by the Second Circuit on Vondette's direct appeal. While they did concede that "Vondette could possibly demonstrate that the proof was susceptible to the interpretation of either a single or multiple conspiracies" as Vondette notes in his motion, the Second Circuit also added that Vondette also needed to show that this failure to give the requested charge resulted in prejudice. The Court held that the construction of the charge "did not cause Vondette prejudice" and rejected his argument on appeal. Vondette, 76 Fed.Appx. at 362-363.

Finally, Defendant argues that his sentence is unconstitutional for a variety of additional reasons. He argues that the rejection of his interrogatories for greater specificity in the Special Verdict sheet rendered his sentence unconstitutional. However, the Second Circuit found that a jury

properly determined amounts in his sentence to justify sentencing under 21 U.S.C. §841(b)(1)(A). Id. Vondette refers to his sentence under this statute as an unconstitutional enhancement which he equates with prejudice (Exhibit 6, page 14). Again, this objection does not pertain to the guidelines and is instead, a rehash of objections to interrogatories that Vondette presented to this Court at trial.

Vondette argues that his sentence is unconstitutional because his colleagues received shorter sentences than he did. He raised this objection on direct appeal arguing that his disparate sentence violated his Fifth Amendment rights (Exhibit 6, pages 32-33). However the case that Vondette relies on, U.S. v. Contreras-Gomez, 991 F.Supp 1242 (E.D.Wash 1998), discusses the Court's option to depart downwardly in the event that the Government disparately charges similarly situated defendants. It does not require downward departure and generally a failure to depart downward is not appealable. See United States v. Ritchey, 949 F.2d 61, 63 (2d Cir. 1991). Moreover the sentencing guidelines state that a sentencing disparity among co-defendants is not a proper basis for departure. U.S.S.G. §1B1.1. In short, Mr. Vondette has no grounds to appeal the Court's failure to give him a downward departure based on the sentences of those involved in his activity.

Finally, Vondette argues that the weight of the marijuana in his conviction should have been calculated by the amount of Tetrahydrocannabinol (THC) rather than the weight of the marijuana itself. Vondette bases this on his interpretation of the Federal Sentencing Guidelines and 21 U.S.C. §802(16) which define marijuana and the calculation of its weight. This is contrary to the statute. However, the Sentencing Guidelines state, "Unless otherwise specified the weight of a controlled substance set forth in the table refers to the entire weight of any mixture or substance containing a detectable amount of the controlled substance. U.S.S.G. §2D1.1. Further, 21 U.S.C. §802(16) makes clear that the term "marijuana" means all parts of the plant with very few exceptions. Exceptions only include hemp products derived from mature stalks of the plant, hemp oil and sterilized seed product. The law is clear on the definition of marijuana and the calculation of its weight.

Defendant raises similar objections to his sentence in Count Two for money laundering. As with his sentence for conspiring to distribute marijuana and hashish, Vondette again contends that his sentence is unconstitutionally bifurcated. Vondette raised this objection in his Sentencing memo (Exhibit 6, pages 41-42). This contention was again held to be without merit by the Second Circuit. Vondette, 76 Fed.Appx. at 363.

B.   Vondette's Venue argument is barred by res judicata.

Vondette also argues that venue was insufficient in Central Islip. The Second Circuit addressed venue on appeal and found that Vondette had committed overt acts in furtherance of conspiracy in the Eastern District of New York, making venue proper. 83 Fed.Appx. at 364. See also U.S. v. Ramirez-Amaya, 812 F.2d 813, 816 (2d Cir. 1987).

Vondette argues that his 240-month sentence on the money laundering count is unconstitutional because the sentencing Court failed to explain its sentence to him. Vondette does not point to the record to support his claim of a lack of explanation and did not preserve this objection on appeal. Vondette's argument is both without factual support and barred by res judicata.

## C.   Vondette's Arguments Against Forfeiture Judgment are Without Merit

In Vondette's Motion for a De Novo Resentencing, he disputes his civil forfeiture of $2,027,845 as constituting double jeopardy. Vondette raised this argument in his objections to the pre-sentencing report. (Exhibit 6, pages 23-24 and 25). In Defendant's appellate brief he also argued that the forfeiture was excessive as having been already collected (Def appellate brief pp73-74). These arguments were found by the Court of Appeals to be factually meritless as "the order of the District Court took into consideration the amounts forfeited by

co-conspirators." Vondette, 76 Fed.Appx. at 365. This argument raises no issue related to the Sentencing Guidelines.

Vondette contends that his forfeiture violates the Fifth and Sixth Amendments, citing his prior raised objections in his sentencing memo and his subsequent addendum. In his sentencing memo, Vondette claims that the forfeiture is barred by statute of limitations, that the Government failed to prove the existence of forfeitable property, and that the forfeiture is excessive (Exhibit 6, page 24). The Second Circuit rejected all of Vondette's objections to his forfeiture. Nowhere in these prior objections does Vondette mention the Fifth or Sixth Amendment or preserve any objection that relates to Booker. The arguments that follow are unpreserved and should not be entertained but are, nonetheless meritless.

Vondette now raises Fifth Amendment issues under due process arguing that the forfeiture of each of his specific assets should have been submitted to a jury. The Due Process Clause requires that the Defendant be given proper notice and an opportunity to be heard to contest forfeiture. See e.g. U.S. v. James Daniel Good Real Property, 510 U.S. 43, 48 (1993); see also United States v. Copeland, 902 F.2d at 1050 ("The Due Process Clause does not restrict the Court with respect to the type of information it may consider for purposes of sentencing.") Vondette was able to dispute the forfeiture at

trial as it was jury determined and received further opportunity to be heard at sentencing. While <u>Austin v. United States</u>, 509 U.S. 602, 622 (1993) does hold that forfeiture is subject to the limitations of the Eighth Amendment's Excessive Fines Clause, in this case the District Court actually reduced the findings of the jury and reduced the sentence significantly. The Second Circuit subsequently held that his arguments against items in the forfeiture failed. <u>Vondette</u>, 76 Fed.Appx. at 365.

Vondette raises Sixth Amendment right to jury trial arguments in his current motion which are unpreserved and without merit. Relying on <u>United States v. Agnello</u>, 344 F.Supp.2d 360 (E.D.N.Y. 2004), Vondette attempts to outline that it is the United States' burden to prove that forfeited money can be traced to defendant. The Second Circuit found that "the Court did not err in finding that Vondette had an interest in each of the amounts forfeited" <u>Vondette</u>, 76 Fed.Appx. at 365. The Government properly established Vondette's interest in the forfeited property.

Vondette's insistence that his forfeitable assets be jury determined is undermined by the fact that his forfeiture was jury determined and was far greater than what than what this Court ultimately held him liable for. Moreover, the Second Circuit held that in Vondette's situation use of substitute assets was proper. <u>Id.</u> Vondette argues that he should not be

subject to forfeiture for proceeds that "merely passed through his hands." U.S. v. Saccoccia, 823 F.Supp 994, 1004 (D.R.I. 1993). However, Saccoccia also holds that the forfeiture amount can include in instances of conspiracy the reasonably foreseeable amounts laundered by co-conspirators in furtherance of the conspiracy. Id. Moreover, Vondette's argument that the money merely passed through his hands has already been rejected by the Second Circuit who stated that, "Vondette's protestation that he was a mere courier is belied by the record, which supports an enhancement for managerial status" Vondette, 76 Fed.Appx. at 365.

Finally, Vondette argues that the amounts alleged in the money judgment are incorrect and should be strictly "gain-based". This argument was not raised in Vondette's previous arguments. While the Seventh Circuit has referred to forfeiture as gain-based, this exact terminology has not been utilized by the Second Circuit. See e.g. United States v. Swanson, 394 F.3d 520 (7th Cir. 2005). However, the Second Circuit found that the amounts in the forfeiture properly related to Vondette's activity. Vondette, 76 Fed.Appx. at 365-366.

D.   The Enhancement for Prior Conviction is valid.

Vondette argues that the application of an enhancement for a prior conviction violates the ex post facto clause on the grounds that it affects the actual sentence [of his prior

conviction] and amounts to "double jeopardy". This is an incorrect understanding of sentencing enhancements. The enhancement does not punish Vondette for the crime he committed earlier; it merely assists in the determination of the sentence for the current criminal conviction. Prior convictions are frequently used to justify upward departures on present sentences and are considered punishment for the current crime. See e.g. United States v. Morris, 350 F.3d 32 (2d Cir. 2003). Defendant raised this argument in his addendum to his sentencing report objections (Exhibit 7, page 4). This objection was found to be without merit by this Court.

Vondette also argued that the sentencing enhancement acted as a form of unconstitutional judicial fact-finding because the enhancement could have been applied to either 841(b)(1)(A) or 841(b)(1)(C). The Second Circuit found that the jury found facts sufficient to support a conviction under 841(b)(1)(A). The application of a prior conviction as a sentencing enhancement is a standard procedure and does not invoke any Apprendi-based issues. It should also be noted that Vondette did not raise any issues related his prior conviction sentencing enhancement on appeal. These issues were not properly preserved on appeal and are nonetheless meritless.

CONCLUSION

For all of the foregoing reasons, Vondette's requests for a de novo sentencing hearing should be denied and his existing sentence should be affirmed.


Dated:   Central Islip, New York
         August 10, 2006


                          Respectfully submitted,

                          ROSLYNN R. MAUSKOPF
                          United States Attorney
                          Eastern District of New York



                          BURTON T. RYAN, Jr.
                          Assistant U.S. Attorney
                          (Of Counsel)


--------

[1] The assistance of legal intern Adrienne C. Baranowicz (J.D. Class of 2008, Fordham University School of Law) in the preparation of this memorandum is gratefully acknowledged.