UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

UNITED STATES OF AMERICA,

**MEMORANDUM
AND
ORDER**

Plaintiff,

- against -                                                  97-CR-1010 (TCP)

MICHAEL VONDETTE,

Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

PLATT, District Judge.

Defendant Michael Vondette ("Vondette" or "Defendant") moves this

Court for a complete resentencing in light of the Supreme Court's decision in

United States v. Booker, 534 U.S. 110 (2005).  In connection with his motion for

resentence, Defendant requests a de novo Pre-Sentence Report ("PSR").

In addition, Defendant makes several motions attacking the merits of his

conviction.  Defendant moves (1) to overturn his conviction due to ineffective

assistance of pro se counsel; (2) to overturn his conviction and dismiss the

indictment for "speedy trial" violations; (3) to vacate the judgment of conviction

and obtain a  new trial pursuant to Fed. R. Crim. P. 33 because "the trial was

tainted by constitutional structural error"; (4) to dismiss the indictment because

the indictment was "constitutionally defective"; and (5) to vacate the judgment of

forfeiture levied against Defendant because as applied to him, the forfeiture order violated the Double Jeopardy Clause of the Constitution.[1]

For the reasons set forth below, this Court concludes that resentence in Defendant's case is not warranted. Accordingly, Defendant's motion for a de novo PSR is **DENIED**. Furthermore, Defendant's motions attacking the merits of his conviction are **DENIED** in their entirety because consideration of said motions is foreclosed by the "mandate rule."

## BACKGROUND

This Court will not reiterate each and every detail of the prolonged history of Defendant's case as the facts are set forth in this Court's prior Memoranda and Orders totaling over fifteen and aggregating over one hundred pages.[2] However,

---

1. In addition, on April 6, 2007 Vondette filed a fourth request for blank subpoenas. The Court refers Vondette to this Court's Order dated March 26, 2007, denying Vondette's request for blank subpoenas, a copy of which was mailed to Vondette on April 9, 2007. See D.E. # 482. This Court assumes that Vondette had not received said mailed copy of this Court's Order prior to sending out his most recent request for blank subpoenas and therefore this Court reaffirms its prior Order and hereby DENIES his requests for blank subpoenas.

2. See Dkt. # 97-CR-1010: Order dated Mar. 14, 2000, D.E. # 142; Order dated Sept. 20, 2000, D.E. # 199; Order dated Nov. 30, 2000, D.E. # 246; Order dated March 30, 2001, D.E. # 283 (published 248 F. Supp. 2d 149 (E.D.N.Y. 2001) aff'd 2001 U.S. App. LEXIS 3889 (2d Cir. Mar. 13, 2001)); Order dated April 11, 2001, D.E. # 291; Order dated Apr. 11, 2001, D.E. # 292; Order dated Apr. 19, 2001, D.E. 302; Order dated Apr. 18, 2001, D.E. # 324; Order dated May 21, 2001, D.E. # 348; Order dated May 21, 2001, D.E. # 349; Order dated Mar. 18, 2002, D.E. # 395; Order dated Aug. 28, 2002, D.E. # 402; Order dated Oct. 16, 2002, D.E. # 417. Dkt. # 06-CV-3570: Order dated Mar. 22, 2007, D.E. # 14; Order dated Mar. 26, 2007, D.E. # 16.

In addition to the above Orders issued by the District Court, the United

the relevant facts as they pertain to Defendant's present motions (his eighty-fourth, eighty-fifth, eighty-sixth, eighty-seventh, eighty-eighth, eighty-ninth, ninetieth, and ninety-first by this Court's count) are set forth below.

**I.      Vondette's Trial and Conviction**

On June 5, 2001, after two trials the first of which ended in a mistrial, Defendant was convicted of conspiracy to distribute and possess with intent to distribute hashish, marijuana, and methaqualone in violation of 21 U.S.C. § 846(b)(1)(A), a Class A Felony, and conspiracy to launder money in violation of 21 U.S.C. § 1956(a)(1)(A), a Class C Felony.

The overwhelming evidence produced at trial revealed one of the world's largest drug smuggling enterprises to date.  At the conclusion of a seven-year operation, Vondette alone was responsible for the purchase and resale of almost

_____

States Court of Appeals for the Second Circuit issued several Mandates and Orders in Vondette's case. The following were issued by the Second Circuit prior to Vondette's trial, each dismissing his appeals for, among other things, lack of appellate jurisdiction: Mandate dated Aug. 22, 2000, D.E. # 195; Mandate dated Nov. 14, 2000, D.E. # 238; Mandate dated Jan. 11, 2001, D.E. # 251; Mandate dated Feb. 14, 2001, D.E. # 262 (denying writ of mandamus).  On March 13, 2001, the Second Circuit issued an Order affirming this Court's denial of Vondette's pretrial release. 2001 U.S. App. LEXIS 3889 (2d Cir. Mar. 13, 2001).  The following were issued by the Second Circuit after Vondette's trial and conviction: Order dated Aug. 23, 2003, D.E. # 421 (affirming judgment of conviction) (published United States v. Vondette, 352 F.3d 772 (2d Cir. 2003), as amended Mar. 28, 2005 (amending Aug. 23, 2003 Order affirming judgment of conviction, and remanding to District Court for reconsideration in light of United States v. Booker, 543 U.S. 220 (2005) and United States v. Crosby, 397 F.3d 102 (2d Cir. 2005))); Mandate dated Feb. 24, 2006, D.E. # 456 (denying writ of mandamus).

nine tons of hashish having a street value of at least eighteen million dollars ($18,000,000). Throughout the trial and to this day, Vondette claims that the evidence produced at trial does not support the conclusion that he was responsible for the leadership of the drug smuggling enterprise and that, if anything, he was a low level member of the conspiracy. However, the evidence at trial and the jury's verdict sheet in particular contradict Vondette's assertions. See Gov't Opp'n Mem. Ex. 2; D.E.# 468. The verdict sheet indicates that Vondette was responsible for distributing one thousand kilograms or more of hashish and one thousand kilograms or more of marijuana. Furthermore, the verdict sheet shows that the jury found Vondette responsible in forfeiture for well over ten million dollars ($10,000,000) in connection with the drug trafficking and money laundering conspiracies.

Count One carries a statutory minimum term of imprisonment of ten years and a maximum term of life and Count Two carries a maximum term of imprisonment of twenty years. The PSR indicated a guidelines range of imprisonment of 360 months to life, supervised release terms of three to five years for Count One and two to three years for Count Two, and a fine ranging from $25,000 to $15,600,000. The probation department recommended a term of imprisonment of 360 months and suggested that no fine be imposed.

## II.     Post-Verdict Motions and Objections to the PSR

Between verdict and sentencing Vondette made several motions. First, on July 19, 2001, Vondette made a Rule 29 motion for judgment of acquittal and a Rule 33 motion for a new trial arguing inter alia that: (1) the government engaged in "outrageous" misconduct in denying the Defendant the opportunity to submit facts to the grand jury; (2) jurisdiction was manufactured; (3) venue in the Eastern District of New York was improper; (4) the indictment included several inconsistent charges and the statute of limitations expired on several counts charged in the indictment; (5) several due process violations occurred during trial including the empaneling of an anonymous jury, the admission of "tainted" evidence at trial, and the failure of the government to turn over exculpatory evidence; and (6) the government and the Court delayed in bringing Defendant's case to trial thereby violating the Speedy Trial Act. See Def.'s R. 29 and R. 33 Mot. dated July 29, 2001; D.E. # 385.

On June 17, 2002,Vondette filed several objections to the PSR and requested a Fatico hearing.  In addition, citing Apprendi v. New Jersey, 530 U.S. 466 (2000), Vondette raised several objections to "fact-finding" in the PSR. Among other things, Vondette argued that based upon the jury's verdict alone, the base offense  level under the Guidelines for Counts One and Two should be 12

and 14 respectively.[3]  Vondette also argued that the government should be precluded from using his prior 1975 conviction and a leadership enhancement to increase the Guidelines range because both were not charged in the indictment. Furthermore, Vondette argued for several downward departures for "his minimal role in the conspiracy," for substandard conditions in the county jail where he was confined during the trial and prior to sentencing, and for a disparity between the Guidelines range for his sentence and that of his co-conspirators.

In connection with his objections to the PSR, Vondette requested a Fatico hearing with respect to the actual amount of drugs implicated in the drug trafficking conspiracy, the actual amount of forfeiture, and the actual amounts of forfeiture recovered from his co-conspirators.  Furthermore, Vondette requested a Fatico hearing to resolve whether a leadership enhancement was appropriate and to determine whether his prior conviction should be included in the calculation of his Guidelines range.  Vondette argued that after resolving all factual inaccuracies and taking into account all downward departures, an appropriate sentence was "time-served" or fifty-seven months.

On August 28, 2002, this Court denied Vondette's Rule 29 and Rule 33 motions. See Aug. 28, 2002 Memorandum and Order; D.E. # 402.  Furthermore,

---

3.        Under the Guidelines the base offense level for Count One was 38 and Count Two was 23.

this Court held that Vondette's objections to the PSR were without merit and therefore there was no need for a Fatico hearing. In addressing Vondette's Apprendi arguments and his objections to the PSR, this Court referred to the special verdict form noting that "all of the details and amounts of drug money attributed to Vondette" clearly established the jury's findings of fact beyond a reasonable doubt. Id.

## II. Original Sentence

On September 3, 2002, this Court sentenced Vondette to a term of 480 months in prison (forty years on Count One and twenty years on Count Two, to run concurrently), five years supervised release, and a fine of $25,000 on both counts. Vondette was also ordered to pay $2,027,845 in forfeiture.

## III. Vondette's Appeals and the Booker/Crosby Remand

On appeal, the Second Circuit affirmed Vondette's conviction, denying his Rule 29 and Rule 33 motions and holding that all of Vondette's challenges to his sentence "lacked merit." United States v. Vondette, 2003 U.S. App. LEXIS 17952, at *16 (2d Cir. Aug. 27, 2003).

In affirming Vondette's conviction, the Second Circuit found the following: federal jurisdiction was not manufactured; the Court's jury charge on a single conspiracy was appropriate; the interrogatories submitted to the jury on the amount of marijuana and hashish were "in accordance with the law"; venue in

the Eastern District of New York was appropriate; the jury charge on the money laundering count was appropriate; the Court did not commit error by empaneling an anonymous jury; and the Court did not make inappropriate comments to the jury. Id.

In turning to the forfeiture order, the Second Circuit held that the order was supported by the special verdict sheet which, in fact, found Vondette liable for over eight million dollars ($8,000,000) in forfeiture. Id., at *18.  Moreover, the Court held that the forfeiture order took into consideration amounts forfeited by Vondette's co-conspirators. Id.   Finally, the Second Circuit held that Vondette's challenges to his sentence lacked merit, thereby striking down Vondette's Apprendi based challenges to alleged unlawful fact-finding in the PSR. Id., at *16.  In particular, the Court found that the amount of hashish involved was properly calculated and more than supported by the evidence produced at trial.[4] Id.  The Court also held  that the evidence at trial clearly supported this Court's conclusion that Vondette was an organizer within the drug organization and therefore it was not clear error to adopt the PSR's finding that Vondette directed the activities of numerous other participants. Id., at *16.

Vondette petitioned for a writ of certiorari to the Supreme Court.  While

---

4.    The Second Circuit noted that the jury found that Vondette was responsible for transporting two tractor trailers full of hashish amounting to 8,164.8 kilograms. Vondette, 2003 U.S. App. LEXIS 17952, at *16.

Vondette's writ was pending, the Supreme Court handed down its decision in United States v. Booker, 543 U.S. 220 (2005), which held that the mandatory application of the Federal Sentencing Guidelines was unconstitutional.  Booker's holding affected cases, such as Vondette's, which were pending on direct review at the time the Booker decision was handed down. Id. at 268 (citing Griffith v. Kentucky, 479 U.S. 314 (1987)) (applying the Court's holding to all cases pending on direct review).  As such, the Supreme Court granted Vondette's petition and remanded his case to the Second Circuit for further consideration in light of the Booker case.  Vondette v. United States, 543 U.S. 1108 (2005), reh'g denied, 544 U.S. 913 (2005). The Second Circuit then remanded Vondette's case to this Court for further consideration in light of the Booker case and the Second Circuit's decision United States v. Crosby, 397 F.3d 103 (2d Cir. 2005). Vondette's case was remanded to this Court for the sole purpose of consideration in light of Crosby.  The Second Circuit noted that its order previously issued affirming judgment in all respects was fully effective and was made part of the order remanding Vondette's sentence to this Court, "except to the extent that it is inconsistent with the present remand in conformity with Crosby."

In accordance with the Second Circuit's remand "for further sentencing proceedings," Vondette's case is now before this Court, "not for the purpose of required resentencing, but only for the more limited purpose of permitting [this

Court] to determine whether to resentence, in light of the new sentencing regime set forth in [Booker]." Crosby, 397 F.3d at 117. Thus, this Court must determine whether Vondette preserved his Sixth Amendment objection and must evaluate Vondette's sentence accordingly.

Following the Second Circuit's mandate filed March 29, 2005, Vondette filed the instant motions for resentence and a de novo PSR. Vondette also filed several additional motions attacking the underlying judgment of conviction; his most recent motions were filed February 26, 2007 and April 7, 2007.[5] The balance of Vondette's motions currently pending before this Court will be addressed herein.[6]

## DISCUSSION

---

5.      On February 26, 2007 Vondette filed a second "Nunc Pro Tunc Supplement to Defendant's Original Rule 33 New Trial Motion" arguing that numerous constitutional violations up to, during, and after trial warrant vacating the judgment of conviction and granting Vondette a new trial. On April 7, 2006, Defendant filed a Reply to the Government's Opposition to Defendant's various motions (including the February 26, 2007 motion) attacking the merits of Vondette's conviction.

6.      In this Court's best effort to bring Vondette's case to a comprehensive conclusion, this Court attempted to stay decision of Vondette's numerous attacks on his conviction until all motions have been filed with the Court. However, given Vondette's voracious and unrelenting filings, it is self-evident that Vondette's inclinations to continuously file motions repeating and realleging his various arguments attacking the conviction cannot be satiated by even the most comprehensive ruling. Therefore, this Court fully anticipates several additional motions and appeals attacking the judgment of conviction and seeking to avoid the Second Circuit's mandate issued in 2003 affirming Vondette's conviction "in all respects." See infra Discussion Part III.

## I.      The Booker and Crosby Decisions

On January 12, 2005, in a two-part decision, the Supreme Court handed

down United States v. Booker, 543 U.S. 220 (2005). In the "Substantive

Opinion," the Court affirmed its holding in Apprendi v. New Jersey, 530 U.S. 466

(2000), that "[a]ny fact (other than a prior conviction) which is necessary to

support a sentence exceeding the maximum authorized by the facts established by

a plea of guilty or a jury verdict must be admitted by the defendant or proved to a

jury beyond a reasonable doubt." Booker, 543 U.S. at 244 (Substantive Opinion).

Thus, pursuant to Booker, "judicial fact-finding that increases the maximum

lawful penalty [(statutory maximum)], if required by the Guidelines, is

prohibited." Crosby, 397 F.3d at 109.   In  implementing its Substantive Opinion,

the Court issued a Remedy Opinion severing and excising two provisions of the

Sentencing Reform Act: 18 U.S.C. § 3553(b)(1) mandating the use of the

Guidelines, and 18 U.S.C. § 3742(e) which set forth standards of review on

appeal. Booker, 543 U.S. at 245 (Remedy Opinion).   In turn, the Remedy

Opinion rendered the Guidelines advisory, not mandatory. Id.

In United States v. Crosby, 397 F.3d 103 (2d Cir. 2005), the first

sentencing appeal before the Second Circuit since Booker, the Court of Appeals

set forth a sentencing framework under the now "advisory" Guidelines. The Court

explained that "sentencing judges remain under a duty with respect to the

Guidelines–not the previously imposed duty to apply the Guidelines, but the continuing duty to 'consider' them, along with the other factors listed in section 3553(a)."[7]  Id. at 111.  In fulfilling the duty to consider the Guidelines, sentencing judges must still determine the applicable Guidelines range, which is determined in the same manner as before Booker. Id.  Importantly, the Second Circuit noted that the "traditional authority of a sentencing judge to find all facts relevant to sentencing will encounter no Sixth Amendment objection," as long as such fact-finding does not increase the maximum lawful sentence. Id. at 112 ("Thus, the sentencing judge will be entitled to find all of the facts that the Guidelines make relevant to the determination of a Guidelines sentence and all of the facts relevant

_____

7.      Section 3553(a) provides:
(a) Factors to be considered in imposing a sentence–the court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection.  The court, in determining the particular sentence to be imposed shall consider–
(1) the nature and circumstances of the offense and the history and characteristics of the defendant;
(2) the need for the sentence imposed–
(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
(B) to afford adequate deterrence to criminal conduct;
(C) to protect the public from further crimes of the defendant; and
(D) to provide the defendant with needed educational or vocational training, medical care, other correctional treatment in the most effective manner;
(3) the kinds of sentences available;
(4) the kinds of sentences and the sentencing range established for–
(A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines–
(I) issued by the Sentencing Commission pursuant to section 994(a)(1) of title 28, United States Code.
18 U.S.C. § 3553(a).

to the determination of a non-Guidelines sentence.").  After considering the Guidelines and the factors set forth in section 3553(a), the sentencing judge should determine whether "(i) to impose the sentence that would have been imposed under the Guidelines, i.e., a sentence within the applicable Guidelines range or within permissible departure authority or (ii) to impose a non-Guidelines sentence . . . ." Id.   In effect, the sentencing judge is under much the same duty post-Booker as he/she was pre-Booker.

While in light of  Booker and Crosby it is clear that certain criminal defendants are entitled to resentencing, the Crosby court also held that "it was not so limited" as to remand every pre-Booker sentence to the sentencing court for a required resentencing.[8]  Crosby, 397 F.3d at 116-118.  Instead, the Second Circuit concluded that it would "remand the case for further sentencing proceedings with such instructions as the court considers appropriate." Id. at 117; see also 18 U.S.C. § 3742(f).  Thus, the Second Circuit held that "the further sentencing proceedings generally appropriate for a pre-Booker sentence pending on direct review will be a remand to the District Court, not for the purpose of a required resentencing, but only for the more limited purpose of permitting the sentencing

_____

8.        In fact, the Court in Booker explained that it did not hold that every sentence imposed prior to Booker and pending on direct review at the time Booker was handed down would lead to a new sentencing hearing. Booker, 543 U.S. at 268. The Court explained that reviewing courts are expected to apply ordinary prudential doctrines when revisiting sentences imposed prior to Booker. Id.

judge to determine whether to resentence, now fully informed of the new sentencing regime, and if so, to resentence." Crosby, 397 F.3d at 117. The Second Circuit, in accordance with Booker's instructions to district courts to apply ordinary prudential doctrines when revisiting sentences imposed prior to Booker, held that a remand for "further sentencing proceedings" meant that the District Court must undertake the proper application of the plain error and harmless error doctrines. Id.

In turning to Vondette's motion for resentence, it is appropriate to explicate in light of Crosby the task which is before this Court today, as Vondette himself misunderstands the application of Booker and Crosby to his case.[9] This Court must first establish whether Vondette preserved his Sixth Amendment objection at the original sentencing stage. A properly preserved error is an objection to the mandatory application of the Federal Sentencing Guidelines. See United States v. Fagans, 406 F.3d 138, 140-41 (2d Cir. 2005) (holding that a properly preserved error is an objection to the mandatory application of the Guidelines). If such error is properly preserved, this Court must then review Vondette's original sentence for harmless error. See id. (remanding to the District

_____

9.      Vondette believes that the Supreme Court's decision in Booker and subsequent remand of his case to the Second Circuit, requires this Court to resentence him. See Def.'s Mot. for de novo resentence and PSR dated Aug. 8. 2005 at 3,4,5; D.E.# 431. As discussed, however, this was not the affect of Booker on cases pending on direct review at the time Booker was issued. See supra note 4.

Court to review the original sentence for harmless error because the error was properly preserved). If, however, Vondette did not preserve his Sixth Amendment objection at the original sentencing phase, then this Court must review Vondette's sentence for plain error. Crosby, 387 F.3d at 119 (noting that an error when not properly preserved is available for review under plain error analysis).

Vondette argues that he preserved his Sixth Amendment objection by citing Apprendi and objecting to numerous fact-findings within the PSR such as his leadership role, the exact amount of marijuana and hashish involved in the drug trafficking conspiracy, and his 1975 prior conviction. Such objections, however, were addressed in this Court's Order denying Vondette's Rule 29 and Rule 33 motions. See Aug. 28, 2002 Memorandum and Order; D.E. # 402. This Court found that all facts used to enhance Vondette's Guideline sentence range were found by the jury beyond a reasonable doubt. This Court's Order was affirmed by the Second Circuit "in all respects." United States v. Vondette, 2003 U.S. App. LEXIS 17952, at * 19-20 (2d Cir. Aug. 27, 2003). Booker and Crosby make clear that the traditional authority of the sentencing judge to make certain findings of fact encounters no Sixth Amendment objection, as long as such findings of fact are not used to enhance the Defendant's sentence beyond the lawful sentence. Crosby, 397 F.3d at 112. The findings of fact objected to by

Vondette were consistent with both <u>Crosby</u> and <u>Booker</u> as they did not enhance Vondette's sentence beyond the maximum lawful sentence, which in Vondette's case was a statutory maximum term of life imprisonment.  Because Vondette's pre-sentence objections never addressed the mandatory application of the Federal Sentencing Guidelines, the error is unpreserved and Vondette's sentence will be reviewed for plain error.

## II.    Vondette's Sentence Under Plain Error Review

"For there to be plain error, there must be 'error that is plain and that affects substantial rights.'" <u>United States v. Ben Zvi</u>, 242 F.3d 89, 95 (2d Cir. 2001) (quoting <u>United States v. Olano</u>, 507 U.S. 725, 732 (1993)). As set forth in <u>Crosby</u>, "a sentence imposed under a mistaken perception of the requirements of the law will satisfy plain error analysis if the sentence imposed under a correct understanding would have been materially different." <u>Crosby</u>, 397 F.3d at 118.  If this Court decides that under the post-<u>Booker</u> regime Vondette's sentence would have been essentially the same as originally imposed, resentence is not required. <u>Id.</u>  Conversely, if this Court determines that Vondette's sentence under the post-<u>Booker</u> standards would have been non-trivially different from his original sentence of 480 months then the plain error test is met and Vondette is entitled to a resentence.

In revisiting Vondette's sentence this Court concludes that it would not

give Vondette a non-trivially different sentence under the post-Booker regime.

Vondette argues that in light of Booker, this Court should not have engaged in findings of fact with regards to his leadership role in the drug trafficking conspiracy and his 1975 prior conviction. However, these were not examples of prohibited fact-finding. The Second Circuit affirmed Vondette's leadership enhancement noting that "Vondette's protestation that he was a mere courier is belied by the record, which supports an enhancement for managerial status." Vondette, 2003 U.S. App. LEXIS, at * 18. Turning to Vondette's 1975 conviction, fact-finding with respect to a prior conviction was explicitly affirmed by the Supreme Court in Booker and by the Second Circuit in United States Fagans, 406 F.3d 138, 141-42 (2d Cir. 2005). In Fagans, the Second Circuit, citing Booker, held that facts of a prior conviction do not implicate a defendant's Sixth Amendment rights and that "the conviction itself and the type and length of a sentence imposed seem logically to fall within this exception." Id.

Finally, Vondette argues that his original sentence did not specifically consider the factors set forth in section 3553(a), and because in the aftermath of Booker this Court is required to consider section 3553(a) when imposing a sentence, Vondette's sentence today would be substantially lower than his original sentence. Vondette ignores that fact that prior to Booker, sentencing Courts were under a duty to consider the factors set forth in section 3553(a).

-17-

While this duty acquired "renewed significance" post-<u>Booker</u>, the fact remains that at the original sentencing phase this Court was under a duty to consider § 3553(a). As such, at the initial sentencing the Court carefully considered Vondette's history and characteristics, the need to afford adequate deterrence, and the kinds of sentences available, which included a maximum term of life imprisonment under both the statute and the Guidelines. In particular, the Court examined the need for the sentence imposed to "promote respect for the law and to provide just punishment for the offense." § 3553(a)(2)(A). While this case has amassed an extensive record on appeal, spanning roughly ten years before this Court, the Court of Appeals, and the Supreme Court, the nature and circumstances of Vondette's offense simply may not be diluted by the extensive record on appeal and time elapsed since Vondette's conviction. Such circumstances have not changed since the Court sentenced Vondette in 2002 and noted that in the Court's thirty years on the bench "I had never seen a drug case as extensive" as Vondette's. Sept. 2, 2002 Trans. at 23. Because the factors considered during Vondette's original sentence remain the same today and are consistent with both <u>Crosby</u> and <u>Booker</u>, this Court concludes that it would not impose a non-trivially different sentence under post-<u>Booker</u> standards. Therefore, this Court concludes that resentence is not warranted and accordingly, Vondette's motion for a <u>de novo</u> PSR is DENIED.

### III. Remainder of Vondette's Motions Attacking Judgment of Conviction

Since the Second Circuit remanded Vondette's case to this Court for consideration in light of United States v. Crosby, Vondette has filed, in addition to his motions for resentence and a de novo PSR, approximately seven additional motions attacking the merits of his conviction, all of which must be denied as they are foreclosed by the mandate rule.

The mandate rule, a subsidiary rule to the law of the case doctrine, "compels compliance on remand with the dictates of the superior court and forecloses relitigation of issues expressly or *impliedly* decided by the appellate court." Burrell v. United States, 467 F.3d 160 (2d Cir. 2006); United States v. Luiz Ben Zvi, 242 F.3d 89 (2d Cir. 2000). "Likewise, where an issue was ripe for review at the time of an initial appeal but was nonetheless foregone, the mandate rule generally prohibits the District Court from reopening the issue on remand unless the mandate can reasonably be understood as permitting it to do so." Ben Zvi, 242 F.3d at 95. However, the mandate rule does not prevent a District Court from considering an issue if the issue was not part of the appellate decision. Burrell, 467 F.3d at 165. When evaluating whether an issue remains open for reconsideration on remand, the District Court "should look to *both* the specific dictates of the remand order as well as the broader 'spirit of the mandate.'" Ben Zvi, 242 F.3d at 96.

In turning to Vondette's seven motions attacking the underlying judgment of conviction in his case, each are either explicitly covered in the Second Circuit's 2003 remand or are within the spirit of the Second Circuit's mandate. As discussed, the Second Circuit addressed multiple aspects of Vondette's trial and conviction including this Court's jury instructions, venue, the forfeiture order, my conduct towards the Defendant throughout trial, alleged fact finding in the PSR, the empaneling of an anonymous jury, and the government's conduct. After closely evaluating Vondette's motions and the underlying trial, the Second Circuit held that the judgment of this Court was "affirmed in all respects." Vondette, 2003 U.S. App. LEXIS 1792, at *19-20. When the Supreme Court sent Vondette's case back to the Second Circuit after Booker, the Second Circuit simply amended its prior 2003 decision affirming the judgment, and sent Vondette's case back to this Court for the sole purpose of evaluating whether to resentence Vondette in the aftermath of Crosby and Booker. In other words, the Second Circuit's order affirming judgment in this case remains in effect, and Vondette is before this Court only for consideration of whether to resentence. The Second Circuit's 2003 order as amended in 2005 may not reasonably be construed to authorize reconsideration of Defendant's underlying conviction. Notably, in United States v. Ben Zvi, 242 F.3d 89, 96 (2d Cir. 2001), the Second Circuit held that "in the context of a remand for resentencing, where an appellate court has

already fully considered the merits of the conviction, the trial court generally is foreclosed from reconsidering the underlying merits of the conviction."  Because Vondette's motions attacking the merits of his conviction were fully considered by the Second Circuit on direct appeal, his remaining motions are foreclosed by the mandate rule and therefore must be and are hereby DENIED in their entirety.

## CONCLUSION

For the foregoing reasons, this Court holds that resentence is not warranted and accordingly Vondette's motion for a _de novo_ PSR is DENIED. Furthermore, Vondette's remaining motions attacking the judgment of conviction are also DENIED in their entirety as they are foreclosed by the mandate rule.

SO ORDERED.

_____/s/_____
Thomas C. Platt, U.S.D.J.

Dated: Central Islip, New York
April 13, 2007